IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 3, 2011

**STATE OF TENNESSEE v. CALVIN AUSTIN**

**Appeal from the Criminal Court for Shelby County**
**No. 09-06064     James C. Beasley, Jr., Judge**

**No. W2010-01872-CCA-R3-CD  - Filed June 21, 2011**

The Defendant, Calvin Austin, was indicted for aggravated robbery, aggravated burglary, and employment of a firearm during the commission of a dangerous felony.  The trial court dismissed the employment of a firearm charge.  Following a jury trial, the trial court declared a mistrial as to the aggravated burglary charge because the jury had failed to reach a verdict on that count.  The Defendant was convicted of the lesser-included offense of robbery, a Class C felony, and sentenced as a Range III, persistent offender to 14 years in the Tennessee Department of Correction.  In this appeal as of right, the Defendant contends that the evidence is insufficient to sustain his conviction of robbery.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Robert Wilson Jones, District Public Defender; and Tony N. Brayton and Michael J. Johnson, Assistant Public Defenders, for the appellant, Calvin Austin.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Senior Counsel; William L. Gibbons, District Attorney General; and Damon Keith Griffin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On May 3, 2009, the victim, who was disabled and retired, received a call from the Defendant, his second cousin, at approximately 8:00 a.m.  The Defendant asked the victim if he had been to the bank that day.  The victim informed the Defendant that the Defendant's

mother, his first cousin, had not yet arrived to take him to the bank to collect his social security check. At approximately 9:00 a.m., someone knocked on the victim's door. When the victim answered the door, an African American male forced his way into the victim's apartment. The intruder had pulled a piece of women's pantyhose over his face and was wearing blue clothing stained with white paint. The intruder pointed what appeared to be a black 9 millimeter handgun at the victim, who was "[n]ervous, excited." The intruder demanded money, and the victim retrieved his wallet, which was attached to his jeans with a chain, from the bedroom. The intruder tore the wallet from the jeans, took the chain and the wallet, and left. The victim did not recognize the intruder's face or voice.

The Defendant's fiancé, Lethaan Campbell, testified that she was living with the Defendant in March 2009. She stated that approximately five weeks before the robbery, the Defendant told her that the victim received money from his retirement account and from social security on a regular basis. The Defendant told her that he was "thinking about robbing" the victim because he believed that the victim wasted his money. Ms. Campbell testified that she thought the Defendant was joking but that when she learned that the victim had been robbed, she suspected that the Defendant had followed through with his thoughts.

Ms. Campbell testified that on the morning of March 3, 2009, the Defendant told her that he had a job painting that day with Ricky Dillard, who had just arrived at their house. When she returned home from work, the Defendant was playing a video game. Later that night, she left the house to pick up her son from work. While she was waiting for her son, she spoke with the Defendant's mother, Marshell Austin, who told her that the victim had been robbed. When she returned home, she found that the Defendant had locked himself out of the house. After she and the Defendant entered the house, she found her expensive "shimmery pantyhose" laying on the bed. She said that the pantyhose appeared as if they had been "cut up with scissors." She confronted the Defendant about the pantyhose, and the Defendant told her that she should not worry about it because he would buy her some more pantyhose. She asked the Defendant why he had cut them up, and the Defendant told her that he was "taking care of some business." When she asked the Defendant what type of business he was taking care of, the Defendant put the pantyhose over his head and answered his cellular telephone. He told the caller to wait and that he was coming. As he was leaving, he told Ms. Campbell that he would return with "the money for the light bill." Ms. Campbell testified that when the Defendant left the house that night, the Defendant was "sweaty," his eyes were "bugged," and "he smelled of alcohol."

Ms. Campbell testified that after the Defendant left, she locked the door and that when the Defendant returned home, she refused to open the door for the Defendant. Ms. Campbell searched the house and found a bag in the Defendant's closet that she had never seen before. Inside the bag, Ms. Campbell found the victim's credit cards, driver's license, medical card,

and social security card. Ms. Campbell also found a jacket, a pair of jeans, and a t-shirt in the bag. She said that the clothing matched what Mr. Dillard was wearing when she left for work that morning and that the clothing was stained with paint.

The next morning, Ms. Campbell called the police and reported what she had found. When the police arrived, they arrested the Defendant, who was in the backyard. Ms. Campbell testified that she gave the police the items that she had found in the Defendant's closet. After some of the policemen left, Ms. Campbell found additional items inside a trash can. Inside the trash can, Ms. Campbell found the "legging part" of her shimmery pantyhose, the victim's wallet, and a chain. Ms. Campbell gave these items to the policeman who had not yet left the house. Later that day, she found a black pistol laying on the ground underneath her window.

On cross-examination, Ms. Campbell admitted that she and the Defendant had arguments throughout their relationship. She admitted that they had been arguing for an extended period of time and sleeping in separate bedrooms before the robbery but that the night before the robbery, they had reconciled. She testified that any problems she may have had with the Defendant did not affect her testimony at trial.

Officer Desmond Gibbs of the Memphis Police Department testified that on March 4, 2009, he responded to Ms. Campbell's 9-1-1 call and that when he arrived, he found the Defendant asleep behind the house. Officer Gibbs testified that Ms. Campbell allowed them to search her house and that she also directed them to the items that she had found inside the house. Officer Gibbs stated that the Defendant told him that Mr. Dillard was responsible for the robbery.

Officer Steven Robert Breth of the Memphis Police Department testified that on March 4, 2009, he received a call regarding another item found at Ms. Campbell's house. When he arrived, Ms. Campbell showed him what appeared to be a "little black handgun" in the grass behind the house. Upon further investigation, Officer Breth discovered that the handgun was really a "pellet or BB style pistol."

Marshell Austin, the Defendant's mother, testified for the defense. Ms. Austin stated that she cared for the victim and would take him to the bank to withdraw money for his expenses. She stated that the victim told her about the robbery when she picked him up to take him to the bank on March 3, 2009. She testified that a few hours after she learned of the robbery, she told Ms. Campbell that the victim had been robbed. Ms. Austin stated that the next morning, Ms. Campbell told her that she had been unable to sleep because she had been arguing with the Defendant. Ms. Campbell also told Ms. Austin that she thought she knew who had robbed the victim.

Ms. Austin testified that she had observed the Defendant and Ms. Campbell arguing on one occasion and that on that occasion, Ms. Campbell pushed the Defendant against the freezer. She stated that the altercation between Ms. Campbell and the Defendant occurred the week before the robbery. She stated that Ms. Campbell and the Defendant had problems throughout their relationship.

The Defendant testified that after Ms. Campbell left for work, he said goodbye to Mr. Dillard. He said that Mr. Dillard returned a short while later and came inside to play a video game. When Mr. Dillard came inside, he was wearing a blue work jacket, black jeans, and a black t-shirt. The Defendant noticed that Mr. Dillard's clothing was stained with paint. While Mr. Dillard was at the Defendant's house, the Defendant received a call about a job. The Defendant told Mr. Dillard that he had to get ready for work, and Mr. Dillard said that he needed to leave anyway. As the Defendant was waiting for his ride to work, Mr. Dillard returned at 9:35 a.m. Mr. Dillard told the Defendant that he had a job interview but that he did not have time to go home and change. The Defendant gave Mr. Dillard a change of clothes and told him to put the paint-stained clothing in a bag. Mr. Dillard changed in the bathroom, while the Defendant continued to play a video game. When Mr. Dillard finished changing his clothes, he asked the Defendant if he could have something to eat. The Defendant told Mr. Dillard to take whatever he wanted from the kitchen. Mr. Dillard and the Defendant left the house when the Defendant's boss arrived at 10:30 a.m. to take the Defendant to work.

The Defendant testified that he worked for approximately three and a half hours before he returned home to get something to drink. After he got something to drink, he went to a friend's house for a few hours before he returned home at 7:00 p.m. When he returned home, Ms. Campbell was already at the house. The Defendant and Ms. Campbell were at the house for a few hours before Ms. Campbell left to pick up her son from work. While Ms. Campbell was gone, the Defendant went to his mother's house, and when he returned home, he realized that he had locked himself out of the house. The Defendant waited in front of the house until Ms. Campbell arrived and let him inside.

When they went inside the house, Ms. Campbell found that her pantyhose "had been cut up" and that Mr. Dillard's clothing was in a bag in the house. Ms. Campbell confronted the Defendant about the pantyhose and the clothes, and the Defendant explained that he did not know what happened to the pantyhose but that he had given Mr. Dillard a change of clothing to wear to a job interview. Ms. Campbell and the Defendant argued, and the Defendant eventually left. The Defendant returned to the house the next morning at 7:30 a.m. Ms. Campbell told the Defendant to get off the porch, and the Defendant went to the back door by the back bedroom and called her. At that point, Ms. Campbell told the Defendant she suspected him of robbing the victim and that she would call the police if he

did not leave. The Defendant refused to leave, and Ms. Campbell called the police. When the police arrived, the Defendant informed the officer that Mr. Dillard may have been involved because Mr. Dillard's paint-stained clothing matched the victim's description of the robber's clothing.

The Defendant testified that he never told Ms. Campbell that he was thinking about robbing the victim. He testified that he was not "on good terms" with Ms. Campbell during the time period when the victim was robbed. He stated that they were not sleeping in the same bedroom and that they had not reconciled on the night before the robbery. He said that for a period of time, he had been living with his mother because his relationship with Ms. Campbell was "rocky." He stated that he believed that Ms. Campbell was testifying against him out of "[s]pite and revenge" for their ongoing disputes.

The Defendant testified that he did not call the victim the morning of the robbery to ask if he had been to the bank. He stated that he had never seen the weapon that was found behind his house. He testified that he did not participate in the victim's robbery, that he never discussed robbing the victim with Mr. Dillard, and that he did not share in the proceeds of the robbery. He stated that he never told Mr. Dillard where the victim lived but that Mr. Dillard lived near the area that he, his mother, and the victim lived.

## ANALYSIS

The Defendant contends that the evidence is insufficient to sustain his conviction of robbery because there was no evidence to show that the Defendant committed the robbery or caused a third party to commit the offense. The State responds that the evidence is sufficient to sustain the Defendant's conviction of robbery under the theory of criminal responsibility.

An appellate court's standard of review when a defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The appellate court does not re-weigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). "A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.;

State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

A conviction for robbery requires proof that the Defendant committed an "intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). As relevant to this case, a person is criminally responsible for another's actions if

(1)     Acting with the culpability required for the offense, the person causes or aids an innocent or irresponsible person to engage in conduct prohibited by the definition of the offense; [or]

(2)     Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]

Tenn. Code Ann. § 39-11-402(1), (2).

In the light most favorable to the State, the evidence reflects that the Defendant knew that the victim kept money with him at his apartment, that the Defendant asked the victim that morning if he had been to the bank, and that a man robbed the victim that morning shortly after the Defendant's telephone call. The man who robbed the victim was an African American male, was wearing Mr. Dillard's clothing, had concealed his face using women's pantyhose, and was carrying what appeared to be a black handgun. That morning, Ms. Campbell saw Mr. Dillard at their house with the Defendant. Later that night, Ms. Campbell searched their house and found Mr. Dillard's clothes; the victim's wallet, identifying information, and credit cards; and pantyhose that had been cut up. The next day, Ms. Campbell found what appeared to be a black pellet or BB gun behind their house. Ms. Campbell testified that the Defendant had told her several weeks before the robbery that he wanted to rob the victim, who he believed did not spend his money wisely.

While the evidence tends to show that the Defendant did not commit the robbery himself, the evidence was sufficient to establish that the Defendant, acting with the intent "to benefit in the proceeds or results of the offense," solicited, directed, or aided Mr. Dillard in the robbery of the victim. See Tenn. Code Ann. § 39-11-402(2). Accordingly, we conclude that the evidence is sufficient to sustain the Defendant's conviction of robbery.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE